# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **MARTHA WINBERRY** | ) | |
| **& JEFFREY WINBERRY,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO.:** |
| | ) | **1:09-CV-240-WHA-CSC** |
| **UNITED COLLECTION** | ) | |
| **BUREAU, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF
## MOTION FOR SUMMARY JUDGMENT

**COMES NOW** Defendant United Collection Bureau, Inc. ("UCB" or "Defendant"), and submits the following Memorandum of Law in Support of its Motion for Summary Judgment.

# TABLE OF CONTENTS

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF UNDISPUTED FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STANDARDS FOR SUMMARY JUDGMENT . . . . . . . . . . . . . . . . . . . . . . . . . 9

ARGUMENT AND CITATION OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . 11

    I.    Plaintiffs's Fair Debt Collection Practices Act Claims Fail as a Matter
of Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

        A.    Plaintiffs's Claims Pursuant to § 1692d of the FDCPA Are Due
to Be Dismissed As a Matter of Law . . . . . . . . . . . . . . . . . . . . 11

        B.    The Claims Pursuant to § 1692e Fail as a Matter of Law . . . 14

            1.    Subsection 1692e(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

            2.    Subsection 1692e(10) . . . . . . . . . . . . . . . . . . . . . . . . . . 17

            3.    Subsection 1692e(11) . . . . . . . . . . . . . . . . . . . . . . . . . . 17

        C.    The Claim for Leaving Message with Neighbor Fails as a Matter
of Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

        D.    Plaintiffs' Claim Pursuant to § 1692f Fails as a Matter
of Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

    II.    Plaintiffs' Claims Under the TCPA Fail as a Matter of Law . . . . . . 21

    III.    Plaintiffs's State Law Claims Fail as a Matter of Law . . . . . . . . . . . 23

        A.    Invasion of Privacy . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

        B.    Negligence and Negligence Per Se . . . . . . . . . . . . . . . . . . . 26

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

## INTRODUCTION

This case involves claims against UCB, a debt collection agency, arising from telephone calls made by UCB, primarily by one of UCB's collection agents, Jim Johnson, to Jeffrey and Martha Winberry, relating to an unpaid debt owed (and apparently still unpaid) by Jeffrey Winberry on a Sears credit card.  The facts show that, during a one-month period,  UCB spoke to Mr. Winberry eight times and Mrs. Winberry four times.  The Winberrys make claims against UCB for violation of the federal Fair Debt Collection Practices Act, the federal Telephone Consumer Protection Act, and various state law claims.  As set forth herein, however, these claims are due to be dismissed as a matter of law for failure to state a claim upon which relief can be granted.

## STATEMENT OF UNDISPUTED FACTS

1.     Plaintiffs Jeffrey Winberry ("Mr. Winberry") and Martha Winberry ("Mrs. Winberry") currently reside in Oklahoma City, Oklahoma. (Ex. 1, J. Winberry Dep. 8:21 - 9:1; Ex. 2, M. Winberry Dep. 18:19 - 19:4.)  During the time period at issue in this litigation, Plaintiffs lived in Ozark, Alabama.  (M. Winberry Dep. 21.)  Plaintiffs filed suit against United Collection Bureau on March 25, 2009.  (Compl., Doc. 1.)

2.     Defendant United Collection Bureau, Inc. ("UCB") is a debt collection

agency organized under the laws of the State of Ohio.  (*See* Doc. 1 ¶ 8; Doc. 10 ¶ 8.)

3.    Greg Scerba ("Scerba") is the Vice President of Operations at UCB's Maumee, Ohio, call center.  (Ex. 3, Scerba Dep. 14:9, 19:17-22.)  In addition to running the Maumee call center, during the times relevant to this matter, Mr. Scerba oversaw the Citibank Department.  (Scerba Dep. 240:11-14.)

4.    Jim Johnson ("Johnson") is employed by UCB as a collection supervisor.  (Ex. 4, Johnson Dep. 5:1-3.)  Mr. Johnson was initially hired on September 9, 2008, as a collector.  (Johnson Dep. 5:8-10.)  Mr. Johnson was promoted to collection supervisor on March 1, 2009.  (Johnson Dep. 5:1-7).

5.    New UCB collectors receive two weeks of classroom training. (Scerba Dep. 177:23 - 179:23; Johnson Dep. 5:17 - 6:5.)  Following their initial training, the collectors receive continuous on-the-job training.  (Scerba Dep. 177:23 - 179:23; Johnson Dep. 6:7.)  Collectors receive training on the FDCPA.  (Scerba Dep. 177:23 - 179; Johnson Dep. 5:20-23; Ex. 5.)  During UCB's collector training program, new collectors must take an FDCPA test.  (Scerba Dep. 177:23 - 179:23; Johnson 6:16-25; Ex. 5 at 0040 - 0045, 1861 - 1863.)

6.    Mr. Winberry's cellular telephone number is (XXX) XXX-2298.  (J. Winberry Dep. 15:9-12.)  Mrs. Winberry's cellular telephone number is (XXX) XXX-3048.  (M. Winberry Dep. 20:1-13.)  The Plaintiffs have not had a home telephone

number since late 2007 when their residential telephone service was disconnected. (M. Winberry Dep. 23:1-9.)  Prior to late 2007, Plaintiffs's residential telephone number was (XXX) XXX-3280.  (M. Winberry Dep. 23:1-9.)

7.  On November 23, 2008, Citicorp Credit Services ("Citibank") placed a debt owed by Mr. Winberry with UCB for collection.  (Ex. 6 at 0003; Ex. 7 at 0442; Scerba Dep. 201:1-5.)  The Citibank debt placed with UCB was for money owed by Mr. Winberry on a Sears credit card for account number XXXXXXXXXXXXX5367. (Exs. 6 & 7.)  Mr. Winberry does not dispute that he owes the debt.  (J. Winberry Dep. 30:18-19, 61:9-11.)

8.  Mr. Winberry is identified in the UCB account notes (Exs. 6 & 7) as DF1.  (Ex. 5 at 0468.)  Mrs. Winberry is identified in the account notes (Exs. 6 & 7) as DF2.  (Ex. 5 at 0468.)

9.  Mr. Winberry's cellular telephone number is associated with the initials "DRL" in the account notes, *e.g., see* Line 049 of Exhibits 6 and 7.  Mrs. Winberry's cellular telephone number is associated with the initials "RES" in the account notes, *e.g., see* Line 047 of Exhibit 6 and 7.

10.  Mr. Johnson was unaware that he was calling Mrs. Winberry's cellular telephone. (Johnson Dep. 34:8-10, 35:11-12.) Mrs. Winberry never told Johnson that he was calling her cellular telephone.  (Johnson Dep. 34:3-7.)  The only reference to

a cellular telephone was when Mrs. Winberry told Johnson to call Mr. Winberry's cellular telephone. (Johnson Dep. 34:3-7.) At this time, after Mrs. Winberry told Johnson to call Mr. Winberry's cellular telephone, Johnson assumed that the other telephone number he was calling (the DRL number) was the cellular telephone number. (Johnson Dep. 115:23-25.) Had Mrs. Winberry told Johnson that the telephone number he was calling was her cellular telephone, Mr. Johnson would have documented the file that the number was her cellular telephone. (Johnson Dep. 39:7-8, 40:9-13.)

11.     UCB started collection efforts on Mr. Winberry's Sears credit card debt on November 24, 2008. (Ex. 6 at 0005; Ex. 7 at 0443; Scerba Dep. 129: 22-25, 168:5-7.) There is no dispute that Mr. Winberry did in fact owe the debt at issue. (J. Winberry Dep. 30:18-19, 61:9-11.) He simply, often in vulgar and coarse language, stated that he did not want to and was not going to pay the debt. (Exs. 6 & 7 Ln. 042, 049 - 051, 061, 064 - 065, 116 - 128; Johnson Dep. 133 - 135.) Mr. Winberry stated that while he had the money, he was not going to pay the debt. (Johnson Dep. 55:18-20.) Mr. Winberry also stated at one time that he had the money and would pay UCB, but wanted to personally hand it to Mr. Johnson so Mr. Winberry could "knock [Mr. Johnson's] ass out." (Johnson Dep. 133:8-17, 134:17-

4

21.)[1]

12.     On November 24, 2008, UCB employee Mr. Johnson called (XXX) XXX-3280, the landline number provided by Citibank as Mr. Winberry's residential telephone number.  (Exs. 6 & 7 at Ln. 015 - 016; Scerba Dep. 165:22 - 166:2.)  The telephone number had been disconnected and no contact was made with Mr. Winberry.  (Exs. 6 & 7 at Ln. 015 - 016; Scerba Dep. 166:6-7.)  The disconnected telephone number was identified in the account notes as an "old phone number." (Exs. 6 & 7 at Ln. 017; Scerba Dep. 162:4-5.)

13.     On December 11, 2008 at 17:54, Johnson called (XXX) XXX-0858 and left a voice message with Plaintiffs's neighbor.  (Exs. 6 & 7 at Ln. 036 - 038.)  Prior to this time, UCB had not made telephonic contact with Mr. Winberry.  (Exs. 6 & 7 Ln. 001-035; Scerba Dep. 166:8-11, 169:12-15.)

14.     When Mr. Johnson calls a neighbor or other third party in connection with collecting a debt, it is to obtain location information. (Johnson Dep. 42:12-18, 71:7-13.)  Mr. Johnson does not recall the substance of the message left with Plaintiffs's neighbor on December 11, 2008.  (Johnson Dep. 42:12-18.)  Generally, when contacting a third party for location information, Mr. Johnson asks for a better

---

[1] Although Mr. Winberry admits he owed the debt, it does not appear that he has ever paid it.  He testified at his deposition that up to two weeks prior to his deposition he was still receiving calls from collection agencies about the unpaid debt.  (J. Winberry Dep. 31:22 - 32:3.)

5

contact number for the debtor or for the third party to deliver a message to the debtor. (Johnson Dep. 42:12-18.) Mr. Johnson has never left a message with a third party asking for a return call because the matter is "urgent" or an "emergency" because to do so would be a violation of the FDCPA and UCB policy. (Johnson Dep. 72:16-23.) When Mr. Johnson was hired by UCB as a collector, he participated in a two week training program. (Johnson Dep. 5:17 - 6:5.) During UCB's training program, he was instructed and trained on legally permissible third party contacts. (Ex. 5 at 0097, 0098, 0116, 0117.) Specifically, Johnson was trained that he could contact third parties to obtain location information for a particular debtor. (Ex. 5 at 0117.)

15.    On December 11, 2008 at 20:43, Mr. Winberry contacted UCB. (Exs. 6 & 7 at Ln 042.) Mr. Winberry cursed at Mr. Johnson and refused to pay the debt. (Exs. 6 & 7 at Ln 041 - 045.) Mr. Winberry contacted UCB with Mrs. Winberry's cellular telephone. (Exs. 6 & 7 Ln. 041 - 045; Ex. 9.)

16.    Mr. Johnson contacted Mrs. Winberry in connection with UCB's collection of Mr. Winberry's debt. (Exs. 6 & 7; Ex. 8 ¶ 3.) Johnson was trained that the FDCPA permits a collector to contact a debtor's spouse. (Johnson Dep. 35:13 - 36:5; Scerba Dep. 214:19-25; Ex. 8 ¶ 3.) Mr. Johnson was also trained and understands that while a debt collector may contact a debtor's spouse, the debt collector cannot collect the debt from the spouse if the spouse is not obligated on the

debt.  (Johnson Dep. 35:13 - 36:5; Scerba Dep. 214:19-25; Ex. 8 ¶ 3.)

17.    Between December 12, 2008 and January 12, 2009, UCB made approximately thirty-three (33) calls in total to Plaintiffs's cellular telephone numbers.  (Exs. 6 & 7.)  UCB spoke with Mr. Winberry eight (8) times.  (Exs. 6 & 7 at Ln. 042, 049, 061, 064, 093, 112, 135, 196.)  UCB spoke with Mrs. Winberry four (4) times.  (Exs. 6 & 7 at Ln. 059, 089, 098, 107.)

18.    Mr. Winberry was consistently vulgar, threatening, and degrading in his comments to Mr. Johnson.  (Exs. 6 & 7; Ex. 10 at 0430 - 0433; Johnson Dep. 133:18 - 135; Walter Dep. 16:12 - 17:2.)  For example, Mr. Winberry threatened to "take care of" Mr. Johnson and Mr. Johnson's family with a bomb.  (Ex. 10 at 0432; Johnson Dep. 133.)  Mr. Winberry told Mr. Johnson that he would pay the debt personally to Johnson so he could knock his ass out.  (Ex. 10 at 0432; Johnson Dep. 133.)  Mr. Winberry was familiar with Mr. Johnson and every time Johnson spoke to Mr. Winberry, Mr. Winberry would state "Oh, it's the faggot again."  (Ex. 10 at 0432; Johnson Dep. 133:18 - 134:4.)  Mr. Winberry testified about his comments to Mr. Johnson:  " I believe I threatened to kick him in the ass until his nose bleeds, and you can quote me on that."  (J. Winberry Dep. 67:9-12.)  Mr. Winberry testified that it is "absolutely" possible that he called Mr. Johnson a "mother f****r."  (J. Winberry Dep. 73:17-19.)  There is no genuine disputed that Mr. Winberry did in fact call Mr.

Johnson a "mother f****r." (Johnson Dep. 151:10-12.)  When Mr. Johnson's supervisor, Danielle Walter, told Mr. Winberry that he was not going to speak to Mr. Johnson in such a vulgar and disparaging manner, Mr. Winberry stated to Ms. Walter, "F**k You." (Ex. 11, Walter Dep. 20:18-21.)  Mr. Winberry also called Ms. Walter a "bitch." (Walter Dep. 27:6-8.)

19.    UCB's last communication with either of the Winberrys was on January 12, 2009, when Mr. Winberry called UCB from his attorney's office and recorded the call in a transparent and self-serving attempt to get Johnson to admit to conduct that Mr. Johnson did not engage in. (J. Winberry Dep. 41:12 - 42:4; Johnson Dep. 144:7 - 145:3).  Mrs. Winberry was in the attorney's office with Mr. Winberry when he made the call to Mr. Johnson on January 12, 2009. (J. Winberry Dep. 42:15-18.)

20.    Mr. Scerba oversaw the Citibank Department. (Scerba Dep. 240:11-14.) A large portion of the Citibank accounts placed with UCB for collection are identified as a "skip private label" accounts. (Scerba Dep. 218:8-11, 241:16 - 242:1.)  A majority of these accounts are placed without a telephone number, or a number that is invalid or disconnected. (Scerba Dep. 218:11-13, 241:16 - 242:1.)  As a result, Citibank accounts, such as Sears credit card accounts, are worked in a manual environment versus an automated dialer campaign. (Scerba Dep. 218:14-19, 241:16 - 242:4.)

8

21.    As a result of Mr. Scerba's strategy, the calls made the basis of this litigation were manually dialed.  (Scerba Dep. 241:1-15, 244:11-14; Ex. 8 ¶ 4.)  With the exception of one call that was generated by UCB's unattended messaging campaign (Exs. 6 & 7 Ln. 063), the calls to Plaintiffs were manually dialed, *i.e.*, the collector physically dialed Plaintiffs's respective telephone numbers on a telephone.  (Scerba Dep. 191:4-21, 241:16 - 243:16; Ex. 8 ¶ 4.)

22.    Mr. Johnson denies that he ever threatened to garnish Mr. Winberry's wages.  (Johnson Dep. 151:21-24.)  Mr. Johnson denies that he ever threatened to call Mr. Winberry's employer.  (Johnson Dep. 151:25 - 152:3.)  Specifically, Mr. Winberry told Johnson that he was both self-employed and unemployed, and thus, there would have been no basis nor reason for Mr. Johnson to make such threats.  (Exs. 6 & 7 at Ln. 043; Johnson Dep. 151:25 - 152:3; J. Winberry Dep. 61:12-18.)

## STANDARDS FOR SUMMARY JUDGMENT

UCB moves this Court to enter summary judgment as a matter of law in its favor pursuant to Federal Rule of Civil Procedure 56.  The purpose of summary judgment  "is to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required" as to a plaintiff's claims. *McIntosh v. Antinino*, 71 F.3d 29, 33 (1st Cir. 1995).  "Summary judgment serves important functions. . . .  Chief among these are avoidance of long and expensive

9

litigation productive of nothing, and curbing the danger that the threat of such litigation will be used to harass or to coerce a settlement." *Washington Post v. Keogh*, 365 F.2d 965, 968 (D.C. Cir. 1966).   As the Supreme Court has noted, summary judgment is an important procedure  "designed to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).  *See generally Celotex Corp.*, 477 U.S. at 317.  Once the party seeking summary judgment successfully bears its initial burden of proof under Rule 56(c), the burden of production shifts to the nonmoving party.  *Id.* at 331.  The nonmoving party must "go beyond the pleadings and by [his or] her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  *Id.* at 324.  In meeting this burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  That party must demonstrate that there is a "genuine issue for trial." *Matsushita*, 475 U.S. at 587.  An action is void of a material issue for trial if "the record taken as a whole could not lead a rational trier of fact to

find for the non-moving party." *Id*. at 587.

## ARGUMENT AND CITATION OF AUTHORITIES

I. **Plaintiffs's Fair Debt Collection Practices Act Claims Fail as a Matter of Law.**

    A. **Plaintiffs's Claims Pursuant to § 1692d of the FDCPA Are Due to Be Dismissed As a Matter of Law.**

The Winberrys claim that UCB violated section 1692d of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq*. ("FDCPA") by harassing and abusing them in connection with UCB's attempt to collect on the Sears credit card debt. Section 1692d generally prohibits debt collectors from engaging in conduct the natural consequence of which is to harass, oppress, or abuse. UCB's actions simply do not rise to this level, however.

The Winberry's allege that UCB violated this section of the FDCPA by engaging in a "systematic campaign of harassment" to their respective cellular telephones despite their insistence that UCB cease communicating with them on their respective cellular telephones; and by causing their cellular telephones to ring and engaging them in repeated telephone conversations with the intent to annoy, abuse, or harass. (Compl., ¶¶ 48-49 and 54-55). Although they do not cite a particular subsection, presumably they complain that UCB violated section 1692d(5), which prohibits collectors from "[c]ausing a telephone to ring or engaging any person in

11

telephone convservation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number."

First, as to the telephone calls, between December 12, 2008 and January 12, 2009, UCB made approximately thirty-three calls in total to Plaintiffs's two cellular telephone numbers.  UCB spoke with Mr. Winberry eight times and with Mrs. Winberry four times.  There is nothing in the FDCPA that prohibits UCB from contacting a debtor's spouse.  *See* 15 U.S.C. § 1692c(b) (FDCPA permits a collection agency to contact the spouse of the debtor by specifically including a spouse in the definition of "consumer"); *see also Pelfrey v. Educational Credit Management Corp.*, 71 F. Supp. 2d 1161, 1165 (N.D. Ala. 1999) (noting that for purposes of § 1692c(b), "[c]ontacts with the consumer's relatives, other than the spouse, violate the FDCPA").  Nor is there anything in the FDCPA that prohibits UCB from contacting the Winberrys on their cellular phones.  Nor does the number, content or pattern of calls in this case amount to improper harassment.

There is no harassment or violation of the FDCPA based upon nothing more than one or two calls a day unaccompanied by oppressive or abusive conduct, which was clearly absent here.  *See Saltzman v. I.C. System, Inc.*, 2009 WL 3190359, at *7 (E.D. Mich. Sept. 30, 2009) (internal citations omitted).  Section 1692d "prohibits a debtor's tender sensibilities only from oppressive and outrageous conduct.  Some

12

inconvenience or embarrassment to the debtor is a natural consequence of debt collection." *Bieber v. Associated Collection Servs., Inc.*, 631 F. Supp. 1410, 1417 (D. Kan. 1986). While the calls may have caused inconvenience and embarrassment, they did not violate the FDCPA. Nor do the number or content of these calls evidence, on the part of UCB, any "intent to annoy, abuse, or harass" Plaintiffs in violation of § 1692d(5). *Cf. Chambers v. Habitat Co.*, 68 Fed. Appx. 711, 715 (7th Cir. 2003) (dismissing FDCPA claim for failure to allege any facts showing that debt collector's collection efforts were made with intent to harass or oppress plaintiff); *Masuda v. Thomas Richards & Co.*, 759 F. Supp. 1456, 1465-66 (C.D. Cal. 1991) (mailing of 48 letters to debtor – on average of six letters per month – not "harassing" or violation of § 1692d of the FDCPA); *Grismore v. United Recovery Systems, L.P.*, 2006 WL 2246359, at *6 (D. Ariz. 2006) ("Defendant's collection notes show three separate discussion[s] with Plaintiff and nineteen telephone calls placed to her house from September to December 2, 2004. . . . The Court finds that Defendant placed the calls to resolve the debt, and does not find any evidence of continuous calling with intent to annoy, abuse, or harass.").[2]

---

[2] Although Plaintiffs requested that UCB cease calling, they did not send the requisite written notice under the FDCPA that the debt was disputed as required by 15 U.S.C. § 1692g(b). Indeed, Mr. Winberry admitted that he owed the debt, he just did not want to pay it. As such, it was not unlawful for UCB to continue to contact Plaintiffs.

**B.     The Claims Pursuant to § 1692e Fail as a Matter of Law.**

Plaintiffs further claim that UCB violated 15 U.S.C. § 1692e of the FDCPA based upon the allegation that UCB used false, deceptive, or misleading representations or means in connection with the collection of the debt at issue, and UCB failed to properly identify itself as a debt collector.  Section 1692e generally "prohibits a debt collector from making any false, deceptive or misleading representations in connection with the collection of a debt." *Taylor v. Heath W. Williams, L.L.C.,* 510 F. Supp. 2d 1206, 1211 (N.D. Ga. 2007).  While the Winberrys do not assert violations of specific subsections of § 1692e, their allegations appear to fall under §§ 1692e(2), e(10), and e(11) of the FDCPA.

**1.     Subsection 1692e(2).**

Subsection 1692e(2) prohibits "the false representation of the character, amount, or legal status of any debt."   15 U.S.C. § 1692e(2).   As noted, it is permissible under the FDCPA to contact a spouse regarding a debt owed by the other spouse as long as the agency does not attempt to collect the debt from the spouse. *See Foster v. D.B.S. Collection Agency*, 463 F. Supp. 2d 783, 803 (S.D. Ohio 2006) (finding a debt collector liable for violating 1692e(2) for attempting to collect a debt from a spouse under no legal obligation to pay debt).   UCB is aware of the law to this effect and has procedures in place to prevent any such occurrence.  (*See* Statement of

14

Facts, ¶¶ 5 & 16.)

Accordingly, if one of UCB's collectors[3] did attempt to collect the debt from Mrs. Winberry, UCB as a matter of law is entitled to the FDCPA's bona fide error defense on this claim. To qualify for the defense, a debt collector must show: (1) that the presumed FDCPA violation was not intentional; (2) the presumed violation resulted from a bona fide error; and (3) the debt collector maintained procedures reasonably adapted to avoid any such error. 15 U.S.C. § 1692k(c); *Kort v. Diversified Collection Services, Inc.*, 394 F.3d 530, 536 (7th Cir. 2005). To avoid liability for an unintentional violation, a debt collector must establish that it maintained adequate systems designed to prevent errors. *Beattie v. D.M. Collections, Inc.*, 754 F. Supp. 383, 389 (D. Del. 1992) (debt collector had established adequate procedures to qualify for bona fide error defense where it furnished employees with a FDCPA practice manual, prepared and distributed a three-page memorandum regarding FDCPA policies, and posted cards over each telephone with the required 1692e(11) disclosures).

The decision in *Beattie v. D.M. Collections, Inc.*, 754 F. Supp. 383 (D. Del. 1992), disposes of this issue in this case. In *Beattie*, the court reiterated that the bona

---

[3] In this case, Jim Johnson, who it appears is the only collector that Plaintiffs allege tried to actually collect the debt from Mrs. Winberry.

15

fide error defense defeats an FDCPA claim for an unintentional violation where the debt collector establishes that it maintained adequate systems designed to prevent errors. In *Beattie*, the court granted summary judgment in favor of the collection agency on an FDCPA claim that the collector did not make the initial "Mini-Miranda" disclosures under § 1692e(11). The court found that the debt collector had established adequate procedures to qualify for the bona fide error defense where it furnished employees with a FDCPA practice manual, prepared and distributed a three-page memorandum regarding FDCPA policies, and posted cards over each telephone with the required 1692e(11) disclosures, and the collector testified that any failure to make this disclosure was unintentional. *Id.* at 389-90.

Like the agency in *Beattie*, UCB has, and had at the relevant time period, procedures in place to avoid FDCPA violations of this sort. (Statement of Facts, ¶¶ 5, 16.) Moreover, as testified to by Jim Johnson, he was trained that it is impermissible to attempt to collect the debt from the spouse if the spouse is not obligated on the debt. While he does not recall specifically asking Mrs. Winberry to pay the debt owed by her husband, if he did so, it was a mistake and unintentional. (Ex. 8 ¶ 3.) Thus, any such attempt was inadvertent and protected by the bona fide error rule.

### 2.    Subsection 1692e(10).

Section 1692e(10) precludes the use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.   15 U.S.C. § 1692e(10). To the extent this section pertains to Mrs. Winberry's allegation that UCB attempted to collect the debt from her, it would be barred by the bona fide error rule as set forth above.

### 3.    Subsection 1692e(11).

Section 1692e(11) provides in pertinent part that a debt collector violates the FDCPA when it fails "to disclose in subsequent communications that the communication is from a debt collector." 15 U.S.C. § 1692e(11). "Section 1692e(11) is aimed at prohibiting false or misleading representations in the collection of a debt." *Reed v. Global Acceptance Credit Co.*, No. C-08-01826-RMW, 2008 WL 3330165, at *3 (N.D. Cal. Aug. 12, 2008).  The court in *Reed*, citing *Pressley v. Capital Credit & Collection Serv.*, 760 F.2d 922 (9th Cir. 1985), noted that where the debtor already knows the identity of the debt collector, follow-up notices from the debt collector are not communications and do not require compliance with § 1692e(11).  *Reed*, 2008 WL 3330165, at *3 (citing *Pressley*, 760 F.2d 922, 925 (9th Cir. 1985)).

Plaintiffs allege that a number of messages left by UCB do not comply with § 1692e in that the messages do not identify that they are from a debt collector.

17

(Compl., ¶¶ 51, 57, 34-43.)  It is clear, however, that Plaintiffs knew who UCB and its collectors were.  (Johnson Dep. 133 - 135.)  Mr. Winberry's casual reference to Mr. Johnson as, "Oh, it's the faggot again," indicates that the Winberrys were familiar with UCB and Mr. Johnson.  Accordingly, the rule announced by *Reed* applies here and bars any claim based upon messages left with the Winberrys.

The Eleventh Circuit recently held that it is a violation of § 1692e(11) for a debt collector to leave a message without identifying that the message is from a debt collector.  *Edwards v. Niagara Credit Solutions, Inc.*, 584 F.3d 1350, 1352 (11th Cir. 2009).  *Edwards*, however, does not address the issue raised in *Reed*, that is, whether there is an FDCPA violation where the debtors know the identity of the caller.  Here, it is clear that the Winberrys knew the identity of the caller and as such, even under the least sophisticated consumer standard, there was no FDCPA violation.

### C.  The Claim for Leaving Message with Neighbor Fails as a Matter of Law.

Plaintiffs allege that UCB left a message with their neighbor for Jeff Winberry to call UCB.  (*See* Compl., ¶ 21.)  Plaintiffs allege that the message was "urgent."  *Id*. Jim Johnson testified that he left a message on December 11, 2008 with the neighbor for Jeff Winberry to call him.  He denies that the message was "urgent."  Morever, this message was left prior to the time that UCB was able to make its initial telephone

contact with the Winberrys.  (Statement of Facts, ¶¶ 13, 14.)  Plaintiffs do not cite which provision or provisions of the FDCPA that UCB purportedly violated by leaving a message with the neighbor, and the claim fails on that ground alone.

Nonetheless, merely leaving a message under these circumstances, according to the Federal Trade Commission, the federal regulatory agency responsible for enforcement and interpretation of the FDCPA, is permissible under the FDCPA.  *See* FTC Statements of General Policy or Interpretation Staff Commentary on the Fair Debt Collection Practices Act, 53 FR 500097, 1988 WL 269068, § 803(2) (definition of "communication" covered by the FDCPA does not include a "request to a third party for a consumer to return a telephone call to the debt collector, if the debt collector does not refer to the debt or the caller's status as (or affiliation with) a debt collector").[4]  As such, there was no FDCPA violation by simply leaving a message with the neighbor to return the call.

Nor is there any admissible evidence that anyone at UCB told the neighbor that the message was "urgent."  This allegation comes from Mrs. Winberry (M. Winberry Dep. 226:11 - 227) and as such is inadmissible hearsay and insufficient to defeat summary judgment.  *See Conquist v. City of Minneapolis*, 237 F.2d 920, 927 (8th Cir.

---

[4]  *See Borden v. Meese*, 803 F.2d 1530, 1535 (11th Cir. 1986) ("Courts accord great deference to the interpretation of statutes and regulations by the agency charged with administering that regulatory scheme.").

2001) ("Cronquist's reliance on affidavits based on hearsay cannot defeat a motion for summary judgment"); *Visser v. Packer Engineering Assoicates, Inc.*, 924 F.2d 655, 659 (7th Cir. 1991) ("Testimony about matters outside their personal knowledge is not admissible at trial, neither is it admissible in affidavit used to support or resist summary judgment."); *see also Dowell v. Prime Healthcare Corp.,* 2001 WL 611198, *1 (M.D. Ala. 2001) ("Plaintiff's evidentiary filings rely heavily on hearsay and are rarely based on personal knowledge.  Many portions of Plaintiff's declaration fall woefully short of the requirements for admissibility under Rule 56(c). The court will not consider inadmissible hearsay when ruling on a summary judgment motion.")(internal citations omitted).

### D.   Plaintiffs' Claim Pursuant to § 1692f Fails as a Matter of Law.

Plaintiffs allege that UCB used "unfair and/or unconscionable means to attempt to collect a debt."  15 U.S.C. § 1692f.  (Compl., ¶¶ 52 & 59.)  Plaintiffs fail, however, to specify what conduct by UCB qualifies as "unfair and unconscionable."  At a minimum, to state a claim for violation of § 1692f, the Winberrys must identify conduct that is beyond the other specific provisions of the FDCPA.  *Taylor v. Heath W. Williams, L.L.C.,* 510 F. Supp. 2d 1206, 1217 (N.D. Ga. 2007).  Plaintiffs fail to identify any misconduct beyond the conduct that allegedly violates other provisions of the FDCPA set out in the Complaint.  Therefore, Plaintiffs's claim pursuant to §

1692f fails for this deficiency alone and warrants dismissal as a matter of law.

## II.     Plaintiffs' Claims Under the TCPA Fail as a Matter of Law.

Plaintiffs allege, at Counts II and III of the Complaint, that UCB negligently, or in the alternative, knowingly or willingly, violated the Telephone Consumer Protection Act ("TCPA"), Title 47, § 227 of the United States Code, through UCB's use of an "automatic telephone dialing system" to call Mrs. Winberry's cellular telephone. (Compl., ¶¶ 61 - 82.) This claim, however, fails for the simple reason that UCB, except for one occasion, did not utilize such a system to dial the cell phone number.

An "automatic telephone dialing system" is defined under the TCPA as "equipment which has the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). The TCPA prohibits the use of an "automatic telephone dialing system" or an artificial or prerecorded voice when calling "any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call." 47 U.S.C. § 227(b)(1)(A)(iii).

The undisputed facts show that the TCPA does not apply to the telephone calls at issue in this litigation. The evidence and testimony clearly indicate to the contrary,

that Mr. Winberry's account was worked in a manual environment, that is, a collector physically used his finger to dial the telephone numbers on the account.  Thus, the telephone calls placed to Plaintiffs's cellular telephones were made manually and not generated by autodialing technology.   (Statement of Facts, ¶¶ 20-21.)  Thus, if an account is manually worked manually, an "automatic telephone dialing system" was not utilized to dial any number associated with the Winberry debt.

As testified to by Greg Scerba and as evidenced in the account notes, only one call associated with the collection of the Winberry debt was of an automated nature and placed to a cellular telephone.  (Statement of Facts, ¶ 21.)  This lone call, however, does not support a claim for liability under the TCPA.  Under the TCPA, Plaintiffs are without a cause of action as they did not receive more than one telephone call in violation of the TCPA in a twelve-month period, which is required to state a claim under the TCPA.  *See Charvat v. GVN Michigan, Inc.*, 531 F. Supp. 2d 922, 925 (S.D. Ohio 2008) ( TCPA provides only a private right of action for a person that receives more than one call in a twelve-month period that violates the TCPA, and a plaintiff cannot recover damages under the TCPA based on one call).  Therefore, Plaintiffs's claims that UCB violated the TCPA and that Plaintiffs are entitled to damages pursuant thereto must be dismissed as a matter of law.

## III.   Plaintiffs's State Law Claims Fail as a Matter of Law.

### A.   Invasion of Privacy.

As detailed above, there is no substantial evidence to support Plaintiffs's state-law invasion of privacy claims and they are due to be dismissed as a matter of law. Alabama recognizes an invasion of privacy claim based upon a collector's or creditor's collection efforts where there is a "wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities." *Jacksonville State Bank v. Barnwell*, 481 So. 2d 863, 865 (Ala. 1985); *Liberty Loan Corp. v. Mizell*, 410 So. 2d 45, 47 (Ala. 1982). *See also Black v. Aegis Consumer Funding Group, Inc.*, 2001 WL 228062, *4 (S.D. Ala. Feb. 8, 2001). As the Alabama Supreme Court has cautioned, however, not every effort by a collector or creditor to collect a debt rises to the level of a cause of action for the debtor. *Black*, 2001 WL 228062 at *5. "The mere effort of a creditor, . . . to collect a debt cannot *without more* be considered a wrongful and actionable intrusion. A creditor has and must have the right to take reasonable action to pursue his debtor and collect his debt." *Mizell*, 410 So. 2d at 47-48 (quoting *Norris v. Moskin Stores, Inc.*, 132 So. 2d 321, 323 (Ala. 1961)) (emphasis added). It is only where the creditor takes actions which exceed the bounds of reasonableness that the debtor has an action against the creditor for injuries suffered. *Barnwell*, 481

23

So. 2d at 865-66.

In *Barnwell*, the Alabama Supreme Court upheld a jury verdict against a bank for invasion of privacy where the bank had (a) made 28-35 calls to the debtor at home and at work within a 28-day period and called plaintiff's mother; (b) used "coarse, inflammatory, malicious and threatening language" in attempting to collect the debt; (c) altered a security instrument to add plaintiff's automobiles as collateral for the debt; (d) attempted to repossess the automobiles based upon the altered security instrument; (e) sent an agent to plaintiff's place of employment who "caused a great deal of commotion" in an effort to obtain one of the cars, and in front of plaintiff's fellow-employees called plaintiff a "deadbeat" and "son of a bitch" and threatened to use "whatever force was necessary" to secure the car. 481 So. 2d at 865-66.

Significantly, the Alabama Supreme Court found the alteration of the security instrument in order to collect the debt to be the single most important factor in sustaining the invasion of privacy claim.

> Most importantly, fraudulently altering the terms of a security instrument in order to attempt to collect a debt flies in the face of reasonableness, public policy, and the law. The jury was warranted in finding these actions on the bank's part were outrageous to a person of ordinary sensibilities.

*Id*. at 366.

In *Mizell*, in contrast, the Alabama Supreme Court found *no* invasion of

24

privacy where the collection efforts consisted of two mailed notices, one telephone call to plaintiff's home, two calls to plaintiff's work, one telephone call to plaintiff's lawyer, a follow-up call and letter to plaintiff, and a collections action filed in district court.  410 So. 2d at 48.

In *Sparks v. Phillips & Cohen Associates, LTD.*, No. 07-0477-WS-C, 2008 WL 2540679 (S.D. Ala. June 20, 2008), the United States District Court for the Southern District of Alabama addressed an invasion of privacy claim in conjunction with an alleged FDCPA violation.  The *Sparks* Court, in summarizing *Windsor v. General Motors Acceptance Corp.*, 323 So. 2d 350 (Ala. 1975), noted that the creditor contacted the debtor about the debt, either personally or via telephone, approximately 15-20 times; that the creditor spoke to the debtors mother (who lived with debtor) several times; and that the creditor actually went to the debtor's home.  *Sparks*, 2008 WL 2540679, at *12 (S.D. Ala. June 20, 2008).  The *Sparks* Court further noted that the creditor was condescending to the to the debtor's mother to the point where after the collector called the debtor's mother "just went crazy," and went to the hospital on one occasion.  *Id.*  The *Sparks* Court duly noted that the above facts were legally insufficient to constitute an invasion of privacy claim.  *Id.*  The Court also noted that the *Jacksonville State Bank v. Barnwell*, 481 So. 2d 863 (Ala. 1985) decision is "illustrative of the type of conduct that must be proven in order to prevail on an

25

invasion of privacy theory under Alabama law." *Id.* at n. 27.

In this case, given Alabama law, Plaintiffs's allegations are simply insufficient to sustain a claim for invasion of privacy. In light of Alabama law, UCB's collection efforts were reasonable and did not rise to the level of a "wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities." To borrow from the *Sparks* opinion in its comparison of the *Barnwell* matter to the matter pending before the Court, "[b]y comparison, the conduct of which plaintiff's accuse [the debt collector] in this case is positively benign." *Sparks*, 2008 WL 2540679.

## B.    Negligence and Negligence Per Se.

For the same reasons set forth above, there is no substantial evidence to support Plaintiffs's state law negligence and negligence per se claims. In addition, courts have held that an FDCPA violation, even if it occurred, would not sustain a negligence per se claim. Plaintiffs in this case assert that the FDCPA and TCPA establish certain statutory duties and UCB's violations of the statutory duties were negligent as a matter of law. Compl., ¶¶ 91-110. Under Alabama law, to establish negligence per se, "a plaintiff must prove: (1) that the statute the defendant is charged with violating was enacted to protect a class of persons to which the plaintiff belonged; (2) that the plaintiff's injury was the kind of injury contemplated by the

statute; (3) that the defendant violated the statute; and (4) that the defendant's violation of the statute proximately caused the plaintiff's injury." *Cook's Pest Control, Inc. v. Rebar*, Nos. 1050029 and 1050128, 2009 WL 418074, at *8 (Ala. Feb. 20, 2009) (quoting *Dickinson v. Land Developers Constr. Co.,* 882 So. 2d 291, 302 (Ala. 2003)).

In *Alleyne v. Midland Mortgage Co.,* No. 05-cv-02412PSFPAC, 2006 WL 2860811 (D. Colo. Sept. 12, 2006), the court dismissed the plaintiff's claim of negligence per se as a result of the defendant debt collector's alleged violations of the standards of care established by the FDCPA. 2006 WL 2860811, at *12-13. In adopting the magistrate judge's recommendation, the court stated:

> The FDCPA is a federal remedial statute which is not based on any traditional tort law principles. The FDCPA does not establish any "standards of care" nor does it provide a basis for tort liability grounded in negligence.

*Id.* The *Alleyne* court further stated:

> [T]hat simply because the FDCPA's statutory purpose is "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses . . ." 15 U.S.C. § 1692(e), an independent duty to a debtor is not created. Further, the FDCPA was not enacted for the public's safety, and cannot reasonably be implicated as a causation factor in plaintiff's claimed "injury" even if an FDCPA violation had occurred. The FDCPA also provides its own remedies for violations, which do not exist at common

law and the FDCPA therefore cannot be relied upon to support a negligence *per se* claim.

*Id.* (quoting *Henry v. Kemp,* 829 P.2d 505, 506 (Colo. App. 1992)(citations omitted) (where a statute provides a specific means of enforcing legal duties that are unknown at common law, that statutory remedy will be considered exclusive)).  "The FDCPA is not a codification of negligence principles."  *Byes v. Credit Bureau Enterprises, Inc.*, No. 95-239, 1996 WL 99360, at *3 (E.D. La. March 6, 1996).

## CONCLUSION

WHEREFORE, PREMISES CONSIDERED, Defendant United Collection Bureau, Inc., respectfully requests that the Court dismiss the claims against it with prejudice as set forth herein.

Respectfully submitted,

 /s/ John W. Scott
John W. Scott
Brent G. Grainger
Attorneys for Defendant
United Collection Bureau, Inc.

**OF COUNSEL:**
SCOTT DUKES & GEISLER, P.C.
2100 Third Avenue North, Suite 700
Birmingham, Alabama 35203
Telephone:  (205) 251-2300
Facsimile:  (205) 251-6773
Email:     jscott@scottdukeslaw.com
           bgrainger@scottdukeslaw.com

28

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 8, 2009, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following CM/ECF participants:

David G. Poston, Esq.
Brock & Stout, LLC
P.O. Drawer 311167
Enterprise, AL 36331

Gerald A. Templeton, Esq.
Templeton Group, P.C.
301 19th Street North, Suite 585
Birmingham, Alabama 35203

/s/ John W. Scott
Of Counsel

50580.1

29