**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| MARTHA WINBERRY & JEFFREY WINBERRY, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 1:09cv240-WHA |
| UNITED COLLECTION BUREAU, INC., | ) ) ) | (wo) |
| Defendant. | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

**I. <u>INTRODUCTION</u>**

This case is before the court on a Motion for Summary Judgment filed by United

Collection Bureau, Inc.  (Doc. #20), and a Motion to Strike Affidavit of Linda Bost, or in the

Alternative, Affidavit Creates Issues of Material Facts (Doc. #38), filed by the Plaintiffs.

The Plaintiffs filed their case in this court bringing claims against United Collection

Bureau, Inc. for violation of the Fair Debt Collection Practices Act ("FDCPA") (Count I), the

Telephone Consumer Protection Act (Count II, III), and Alabama state law claims of negligence

(Count IV), negligence per se (V), and invasion of privacy (Count VI).  Count I of the Complaint

includes violations of several subsections of the FDCPA on behalf of each of the Plaintiffs.

United Collection Bureau, Inc. ("UCB") has moved for summary judgment as to all

claims.   UCB also moved to seal two exhibits provided in connection with the Motion for

Summary Judgment, which the court granted.[1]  In support of its Reply to the Winberrys'
response to Summary Judgment, UCB offered additional deposition excerpts and a new affidavit.

The Winberrys have moved to Strike the affidavit offered by UCB, and have alternatively
responded to that evidence.  UCB also filed a response to that response.

For the reasons to be discussed, the Motion for Summary Judgment is due to be
GRANTED in part and DENIED in part and the Motion to Strike is due to be DENIED.


## II.  SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper
"if the pleadings, depositions, answers to interrogatories, and admissions on file, together with
the affidavits, if any, show that there is no genuine issue as to any material fact and that the
moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S.
317, 322 (1986).

The party asking for summary judgment "always bears the initial responsibility of
informing the district court of the basis for its motion, and identifying those portions of the
'pleadings, depositions, answers to interrogatories, and admissions on file, together with the
affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."
*Id.* at 323.  The movant can meet this burden by presenting evidence showing there is no dispute
of material fact, or by showing, or pointing out to, the district court that the nonmoving party has

---

[1] The court has not referred to the exhibits subject to the motion to seal in this
Memorandum Opinion and Order.  *See* Doc. #25.

failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-324.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324.   To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).   On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986).

After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

## III.  <u>FACTS</u>

The submissions of the parties establish the following facts, viewed in a light most favorable to the non-movant:

This case arises from telephone calls made to Jeffrey and Martha Winberry (collectively "the Winberrys") by United Collection Bureau, Inc. ("UCB") to collect on a debt of Jeffery Winberry.   UCB is a debt collector.  Agents of UCB, primarily Jim Johnson ("Johnson"), called the Winberrys on an unpaid debt owed by Jeffrey Winberry on a Sears credit card.   The Winberrys currently reside in Oklahoma City, Oklahoma, but during the time period at issue in this case, lived in Ozark, Alabama.

UCB was provided the Winberrys's home address and telephone number by Citibank. The telephone number had been disconnected since 2007. A Lexis Nexis search was conducted to find the telephone number of a neighbor of the Winberrys. Johnson called a neighbor of the Winberrys, Linda Bost. There is some dispute as to what message was left with Linda Bost.

There is no dispute that Johnson called both Winberrys on their cellular telephones. It is also undisputed that Jeffery Winberry used coarse language and threats to Johnson during some of the calls. The court has been provided with account notes which reflect information about the calls. The Winberrys admit that the call notes reflect approximately 33 phone calls made to the Winberrys's cellular telephones, although they do not concede that there were only 33 calls placed. The calls were made beginning December 11, 2008 and ending January 12, 2008.

Martha Winberry has testified that she informed Johnson that she suffered from health ailments. Martha Winberry also testified that Johnson said she was responsible for the debt because she was married to Jeffery Winberry. On at least one occasion, Jeffery Winberry terminated the call with Johnson and Johnson immediately called back and left a message. Johnson Dep. at page 110: 19-25. The Winberrys's minor daughter also witnessed at least one of the calls. Johnson also noted that there were several refusals to pay the debt.

## IV. <u>DISCUSSION</u>

The Winberrys have asserted federal and state law claims. The court turns first to the federal claims.

A. Fair Debt Collection Practices Act Claims

4

The Fair Debt Collection Practices Act ("FDCPA") was enacted by Congress "to eliminate abusive debt collection practices by debt collectors" and "to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e).  The Act provides a civil cause of action against any debt collector who fails to comply with the requirements of the Act. *See* 15 U.S.C. § 1692k(a). A debt collector can be held liable for an individual plaintiff's actual damages, statutory damages up to $1,000, costs, and reasonable attorney's fees. 15 U.S.C. § 1692k(a)(1)-(3).  The FDCPA is a strict liability statute.  *Bentley v. Great Lakes Collection Bureau*, 6 F.3d 60, 63 (2d Cir. 1993); *In re Cambron,* 379 B.R. 371, 374 (M.D. Ala. 2007).

The Act, however, provides debt collectors with an affirmative defense called the "bona fide error" defense, which insulates them from liability even when they have failed to comply with the Act's requirements.  *Edwards v. Niagara Credit Solutions, Inc.,* 584 F.3d 1350, 1352 -1353 (11th Cir. 2009).   This affirmative defense is codified at 15 U.S.C. § 1692k(c), which provides that a debt collector may not be held liable under the FDCPA "if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." *Id.* A debt collector asserting the bona fide error defense must show by a preponderance of the evidence that its violation of the Act: (1) was not intentional; (2) was a bona fide error; and (3) occurred despite the maintenance of procedures reasonably adapted to avoid any such error.  *Edwards,* 584 F.3d at 1353.  The failure to meet any one of those three requirements is fatal to the defense.  *Id.*

At the outset the court notes that it is has been difficult to navigate the briefs in support of and in opposition to the Motion for Summary Judgment because the claims argued by the

5

Winberrys in their briefs are not completely consistent with the claims pled in the Complaint. According to the Winberrys's response to the Motion for Summary Judgment, they each are bringing claims for violation of the following provisions of the FDCPA: § 1692b(5),  1692c(b), § 1692d, § 1692e, § 1692e(2), § 1692e(5), § 1692e(10), § 1692e(11), and § 1692f.  The court now turns to UCB's grounds for summary judgment as to those claims.

    1. § 1692b(5)

The Winberrys have stated in their brief in response to the Motion for Summary Judgment that the mere fact that 20 calls were placed by a debt collection agency to a non-liable spouse is evidence that § 1692b(5) was violated.  UCB contends that no claim for violation of § 1692b(5) is alleged in the Complaint, so that summary judgment must be granted on any claim asserted in the brief on the basis of a violation of that statutory section.  Upon review of the Complaint filed in this case, the court agrees that while the Complaint specifically pleads violations of § 1692d, 1692e, and 1692f, it does not cite § 1692b generally, or any sub-section of § 1692b.  Summary judgment is, therefore, due to be GRANTED as to any purported claim for violation of § 1692(b)(5).  *See Gilmour v. Gates*, 382 F.3d 1312, 1314 (11th Cir. 2004) (stating that a plaintiff may not amend the complaint through argument in a brief opposing summary judgment).

    2. § 1692c(b)

The basis for the Winberrys's claim for violation of § 1692c(b) is that UCB requested a third party to deliver a message to the Winberrys.   The Winberrys also invoke § 1692b as supporting their claim under § 1692c(b).  UCB states that the Winberrys did not claim a violation of § 1692c(b) until they responded to the Motion for Summary Judgment.

Upon review of the Complaint, it appears that while the Complaint refers to the evidence used in support of this claim, namely an "urgent" message left with a neighbor, it does not invoke § 1692c(b) or 1692b.   Instead, the allegation of an "urgent" message left with a neighbor forms part of the Winberrys's claim under § 1692e(10), discussed below.   No claim having been pled in the Complaint for violation of § 1692c(b), either independently or by way of § 1692b, summary judgment is due to be GRANTED as to this separate § 1692c(b) claim.  *See Gilmour*, 382 F.3d at 1314.

3.  § 1692d

15 U.S.C. § 1692d provides as follows:
A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
(1) The use or threat of use of violence or other criminal means to harm the physical person, reputation, or property of any person.
(2) The use of obscene or profane language or language the natural consequence of which is to abuse the hearer or reader.
(3) The publication of a list of consumers who allegedly refuse to pay debts, except to a consumer reporting agency or to persons meeting the requirements of section 1681a(f) or 1681b(3) of this title.
(4) The advertisement for sale of any debt to coerce payment of the debt.
(5) Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.
(6) Except as provided in section 1692b of this title, the placement of telephone calls without meaningful disclosure of the caller's identity.

UCB moves for summary judgment on the 15 U.S.C. § 1692d claim, arguing that the calls made by its agents may have caused inconvenience and embarrassment, but that thirty-three phone calls in one month did not rise to the level of abuse or harassment so as to violate the FDCPA.  UCB also characterizes Martha Winberry's testimony about informing Johnson of her

physical ailments as murky and unsubstantiated.  UCB relies on cases outside of this jurisdiction, such as *Grismore v. United Recovery Systems*, No. CV-05-2094-PHX-JAT, 2006 WL 2246359 (D. Ariz. Aug. 3, 2006), in which the court concluded that no reasonable jury could return a verdict for a plaintiff based on nineteen calls placed between the months of September and December.

"Ordinarily, whether conduct harasses, oppresses, or abuses will be a question for the jury." *Jeter v. Credit Bureau, Inc.,* 760 F.2d 1168, 1179 (11th Cir. 1985).   To help ensure the most complete protection possible, the court has adopted a "consumer protective standard," *id.*, which means that "[c]laims under § 1692d should be viewed from the perspective of a consumer whose circumstances makes him relatively more susceptible to harassment, oppression or abuse." *Id.*

Although §1692d is not limited to the conduct listed within it, the conduct identified by the Winberrys potentially falls within two of the listed prohibited actions; namely, (5) causing a telephone to ring or engaging any person in conversation repeatedly with intent to annoy, abuse, or harass and (6) placement of telephone calls without meaningful disclosure of the caller's identity.[2]

It is undisputed that at least 33 phone calls were made by UCB during a one month period.  Jeffery Winberry also testifies in his deposition that on some occasions, Johnson would call, hang up, and then call Jeffery Winberry's wife who was sitting next to him on the couch or

---

[2] The Winberrys have argued that § 1692d(6) was violated because Johnson called 24 times during which he did not identify himself.  UCB responds that there is no allegation of a violation of § 1692d(6) in the Complaint.  There is, however, an allegation of a violation of § 1692d. Furthermore, the facts underlying this claim, Johnson's failure to identify himself as a debt collector, are pled in the Complaint. The court, therefore, has considered the argument that 1692d(6) was violated in the context of the 1692d harassment claim.

wake her up, *id.* at 71:3-7; that Johnson told him he would call Jeffery Winberry's employer, his neighbors, his family, and his daughter.  *Id.* at 48: 16-22.  Jeffery Winberry also testified that Johnson threatened him with garnishment.  *Id.* at page 53: 7-1.  Also, accepting the Winberrys's testimony as true for the purposes of this motion, Johnson made phone calls even after Jeffery Winberry informed him that he did not intend to pay the debt.  Martha Winberry also testified that she informed Johnson that she was sick and disabled.  Martha Winberry Dep. at page 123: 21-23.

Viewing this testimony in a light most favorable to the non-movant, the conduct established at this point in the proceedings includes evidence that Johnson, having been informed that Jeffery Winberry was not going to pay the debt, and having been informed that Martha Winberry had health ailments and was not liable for the debt, continued to call both Winberrys, even placing calls to Martha Winberry once Jeffery Winberry had ended a conversation, sometimes not identifying himself as a debt collector, and sometimes threatening legal action he did not intend to take, resulting in 33 calls in relatively short period.  This conduct, applying the *Jeter* standard, is more egregious than that in the case relied upon by UCB, and is in line with the conduct found by other courts to constitute a violation of the FDCPA. *See e.g., Fox v. Citicorp Credit Services, Inc.*, 15 F.3d 1507 (9th Cir. 1994) (reversing summary judgment and finding that calls which were intimidating, threatened garnishment, and were placed at work despite a request by the debtor could be found by a jury to be harassing conduct).   Accordingly, summary judgment is due to be DENIED as to this claim.

3.  § 1692e

The Winberrys bring claims for violations of several subsections of § 1692e, each of which the court will address in turn.

15 U.S.C. § 1692e provides, in relevant part, as follows:

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

* * *

(2) The false representation of--
(A) the character, amount, or legal status of any debt; or
(B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt.

* * *

(5) The threat to take any action that cannot legally be taken or that is not intended to be taken.

* * *

(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.
(11) The failure to disclose in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector, except that this paragraph shall not apply to a formal pleading made in connection with a legal action.
* * * *

a.  1692e(2)

UCB advances a specific argument with respect to the 1692e claims asserted by Martha Winberry that the allegation in the Complaint is only that UCB threatened to garnish Jeffery Winberry's wages and contact his employer, not Martha Winberry's.  The court has reviewed the allegations of the Complaint and agrees that the only allegation of a violation of § 1692e in the

Complaint by Martha Winberry is that the Defendant failed to identify itself as a debt collector, whereas the claims asserted by Jeffery Winberry include an allegation of a threat to take legal action not allowed or intended to be taken, language taken from 1692e(5). *See* Complaint at ¶ 58. Therefore, the court finds that summary judgment is due to be GRANTED to the extent that Martha Winberry attempted to assert a § 1692e(2) claim based on threatened legal action in the form or garnishment or seizure of the home.

With respect to the section 1692e(2) claim alleged in the Complaint, the Winberrys contend that Martha Winberry was not liable on the debt, but that Johnson attempted to collect the debt from her. The Winberrys state that this provision was violated when Johnson represented that Martha Winberry was liable for the debt at issue. Martha Winberry's testimony is that Johnson "was saying you need to pay the bill, you know I'm going to keep on calling, you owe the bill . . ." Martha Winberry Dep. at page 191: 4-6. She also testifies that when she said the debt was not on her credit card he said, "yes, it is your card because [she] was married to Jeff." *Id.* at page 54: 17-20. In her affidavit, Martha Winberry also stated that she told Johnson she was not responsible for the debt. Martha Winberry's Affidavit at page 3.

UCB invokes the bona fide error defense. As stated above, the bona fide error defense requires a showing that (1) the FDCPA violation was not intentional, (2) the presumed violation resulted from a bona fide error, and (3) the debt collector maintained procedures reasonably adapted to avoid any such error. 15 U.S.C. § 1692k(c).

UCB argues that Johnson was aware that he could not collect on a debt from the spouse of the owner of the debt, so that if Johnson represented to Martha Winberry that he could collect the debt from her, it was an error, subject to the bona fide error defense. Johnson has stated in an

11

affidavit that he did not recall asking Martha Winberry to pay the debt by her husband, but that if he did so, it was a mistake and unintentional.  Johnson Affidavit at page 3.  UCB states that the Winberrys offer no evidence to the contrary.

In response to this defense, the Winberrys state that there is a question of fact which precludes summary judgment on this defense.  The Winberrys contend, by pointing to the statement by Johnson that he did not remember trying to collect Jeffrey Winberry's debt from Martha Winberry, that if Johnson cannot remember the conversation, he cannot state that it was unintentional.  The Winberrys also point to Martha Winberry's testimony that she told Johnson she was not responsible for the debt and he said that she was responsible by virtue of her marriage to Jeffery Winberry.

UCB essentially asks the court to find as a matter of law, based on Johnson's testimony that he does not remember the statements testified to by Martha Winberry, but that if he did make the statements, they were unintentional, that this establishes the bona fide error defense. The specificity of Martha Winberry's testimony as to the nature of the conversation between Johnson and herself, however, allows for a reasonable inference that Johnson's statements were intentional, not accidental.   The court must conclude, therefore, that Johnson's intent is a question of fact.  *See*, *e.g.*, *Valencia v. Affiliated Group, Inc.*, No. 07-61381-CIV, 2008 WL 4372895 (S.D. Fla. Sept. 24, 2008) (the determination of the parties' intent in the context of the bona fide error defense is a question of fact rather than one of law).  Accordingly, the court concludes that the Winberrys have sufficiently created a question of fact precluding summary judgment as to both the violation of § 1692e(2), and the bona fide error defense.

b.  § 1692e(5)

As stated above, section 1692e(5) prohibits the threat to take any action that cannot legally be taken or that is not intended to be taken.  Jeffery Winberry testified that during conversations with him, Johnson threatened to make sure that Jeffery Winberry's wages got garnished and that Jeffery Winberry lost his house.  Jeffery Winberry Dep. at page 53: 7-12.  The Winberrys also argue that similar threats were made to Martha Winberry, but for the reasons discussed above, summary judgment is due to be GRANTED as to § 1692e claims by Martha Winberry outside those alleged in the Complaint.

With respect to Jeffery Winberry's claim, UCB states that there is no allegation in the Complaint that Johnson threatened to seize the Winberrys's home.   The fact section of the Complaint mentions only garnishment and contact of the employer, but the § 1692e violation as to Jeffery Winberry states that the "violations include, but are not limited to, the Defendant's threat to take any action that cannot legally be taken or that is not intended to be taken." Complaint at ¶ 58.  Therefore, rather than attempting to assert a violation of a completely different statutory subsection, the testimony as to seizure of the home is a fact used to support a claim that was pled.  The court finds, therefore, that Jeffery Winberry's testimony relates to an allegation fairly within the claim as pled.

As to the merits of Jeffery Winberry's claim, UCB argues that the Winberrys self-servingly contacted UCB on January 12, 2009 from their attorney's office and recorded a conversation.  The court has reviewed the deposition excerpts cited.  While Johnson contends that Jeffery Winberry called him and attempted to make him threaten Jeffery Winberry with garnishment, but that he never threatened to garnish his wages, Johnson Dep. at page 151: 22-24, Jeffery Winberry has testified that Johnson did threaten him with garnishment, and other legal

action.  Jeffery Winberry Dep. at page 53: 7-1.  The factual dispute between the parties as to

what was threatened by Johnson is a question of fact that precludes summary judgment.  UCB

having only moved for summary judgment on two issues, adequacy of pleading and the veracity

of Jeffery Winberry's testimony, the court concludes that summary judgment is due to be

DENIED as to this claim.

     c.  § 1692e(10)

     The Winberrys have identified three separate violations of 1692e(10).  They contend that

§ 1692e and e(10) were violated because UCB provided false perceptions that it might seize real

property, garnish wages, or contact employers.   A second violation is based on Martha

Winberry's testimony that she was told by a UCB agent that she was liable on the debt because

she was married to the debt holder.  The Winberrys further contend that § 1692e(10) was also

violated by UCB's contacting a third party.   The court will address each of these in turn.

     The false perception of legal action claim is based on the same evidence discussed above

in connection with Jeffery Winberry's § 1692e(5) claim.  UCB argues that this allegation was

pled as part of the § 1692e(5) claim because the Complaint tracks the language of that statutory

subsection.  The Complaint, however, includes language from statutory subsection § 1692e(10)

and e(5).  *See* Doc. #1 at ¶¶ 56, 58.[3]  Therefore, this being the only ground for summary

---

    [3] While paragraph 56 tracks 1692e, 1692e(10) contains similar language, so the court
concludes that e(10) is fairly within the allegation of ¶ 56.  The court also notes that in its initial
brief in support of summary judgment, UCB states that it appears that the Winberrys are alleging
violations of 1692e(2), e(10), and e(11).  *See* Doc. #21 at page 14.  The Winberrys explain in
their response to the motion that they also assert violations of § 1692e and e(5).  In its Reply,
UCB contends that the Complaint asserts a § 1692e(5) claim, not an e(10) claim. *See* Doc. # 36
at page 21.  Clearly, language from both subsections is present in the Complaint.

judgment advanced as to the e(10) claim, summary judgment is due to be DENIED as to Jeffery Winberry's § 1692e(10) claim based on threatened legal action.

As discussed above, Martha Winberry has provided evidence that she was told she could be held responsible for Jeffery Winberry's debt.  With respect to this claim, UCB again claims the bona fide error defense.  As described above, in response to the bona fide error defense, the Winberrys argue that the Defendants have created a question of fact by pointing to evidence by Johnson that he did not remember trying to collect Jeffrey Winberry's debt from Martha Winberry.  The Winberrys also point to Martha Winberry's testimony that she told Johnson she was not responsible for the debt.  For the reasons discussed above, the court finds that questions of fact have been created which preclude summary judgment both as to the violation based on Martha Winberry being told she was responsible for the debt, and as to the bona fide error defense.

The Winberrys also argue that e(10) was violated because the contact with third parties, the Winberrys' neighbors, went beyond a request for location information, and extended to leaving a message to return the call with the third parties.   There are apparently contacts with two different neighbors at issue in the Winberrys's brief.  The first is with Linda Bost, a neighbor identified in the Complaint, although not by name.  UCB states that there is no separate claim in the Complaint for the calling of a second neighbor.  The court agrees that a separate claim under e(10) for calling a second neighbor is not fairly within the allegations of the Complaint.  Accordingly, the court will only consider the e(10) claim that is alleged within the Complaint regarding the alleged "urgent" message left with the neighbor, Linda Bost.

In the Complaint, the Winberrys have alleged, and Martha Winberry has testified, that Johnson told the neighbor, Linda Bost, that his call was urgent.  UCB has provided new evidence in the form of Linda Bost's affidavit in which she states that she was not told by UCB that the call was urgent.   The Winberrys have moved to strike this affidavit on various grounds, and have argued in the alternative that the affidavit creates questions of fact.

Although the affidavit of Linda Bost is newly-submitted evidence, it is responsive to the Winberrys's arguments, and the Winberrys have addressed the evidence, so the Motion to Strike is due be denied.  The Winberrys contend that the evidence at most creates a question of fact because it establishes that UCB went beyond location information and left a message with the neighbor.  That question of fact, however, if relevant, would only be relevant to a claim under §1692b.  The claim at issue, the one pled in the Complaint, is for violation of  § 1692e(10), the use of a false representation or deceptive means.  To establish that deception was used, the Winberrys must create a question of fact as to the substance of Johnson's message.  Martha Winberry stated in her deposition that the Bosts told her that the caller said he had an urgent message.  Martha Winberry Dep. at page 226: 20-23.  UCB, however, objects to this evidence on the grounds that Martha Winberry's testimony as to what Linda Bost told her that Johnson said is hearsay.  The Winberrys, in their Motion to Strike, do not argue otherwise, or contend that any exception to hearsay applies, choosing instead to argue the merits of a claim which is not pled in the Complaint.

In sum, the claim as pled, that an urgent message left with a neighbor constituted deception under 1692e(10), is supported by no evidence other than Martha Winberry's hearsay statement.  Therefore, in addition to summary judgment being warranted on the un-pled 1692c(b)

and 1692b claims based on the contact with a neighbor, as discussed above, summary judgment

is also due to GRANTED on all 1692e(10) claims based on contacts with neighbors.

     d. § 1692e(11)

     The Winberrys have alleged violations of § 1692e(11), which identifies as a violation of

the FDCPA the following:

> The failure to disclose in the initial written communication with the consumer . . .
> that the debt collector is attempting to collect a debt and that any information
> obtained will be used for that purpose, and the failure to disclose in subsequent
> communications that the communication is from a debt collector . . . .

     In support of their § 1692e(11) claims, Martha Winberry and Jeffery Winberry both

stated in affidavits that they received phone messages from Johnson in which he identified

himself by name, but did not identify that he was a debt collector.

     UCB acknowledges that the Eleventh Circuit has held that a debt collector cannot leave a

message without identifying that the message is from a debt collector. *See Edwards v Niagara*

*Credit Solutions, Inc.*, 584 F.3d 1350, 1352 (11th Cir. 2009). Additionally, the court rejected the

application of the bona fide error defense under the facts in *Edwards*, because the debt collection

agency intentionally left messages in which it did not reveal that it was a debt collection agency.

*Id.* at 1353.

     UCB argues in this case that it complied with the requirement that its agents identify

themselves as debt collectors because it is clear from the transcript of the messages that the

Winberrys were aware of who was calling. UCB relies on cases from another circuit, including

*Reed v. Global Acceptance Credit Co.*, No. C-08-01826, 2008 WL. 3330165 at *3 (N.D. Cal.

Aug. 12, 2008) (citing *Pressley v. Capital Credit & Collection Serv.*, 760 F.2d 922 (9th Cir.

1985)). The Winberrys state that their knowledge is irrelevant, and that the plain text of the

statute prohibits "the failure to disclose in subsequent communications that the communication is from a debt collector . . . ." 15 U.S.C. § 1692e(11).

Although perhaps not uniformly, district courts in California reject the interpretation of the statute in *Pressley*, the case relied upon in *Reed*. *See Schwarm v. Craighead* 552 F. Supp. 2d 1056, 1082 (E.D. Cal. 2008). In *Schwarm*, the court explained that the Ninth Circuit in *Pressley* reasoned that a follow- up notice did not constitute a "communication" as used in § 1692e(11). *Id.* The court's decision, however, was based on a prior version of § 1692e(11), which Congress amended subsection (11) in 1996 to differentiate between "initial" communications and "subsequent" communications. *Id.* at 1082 n.18. Apparently recognizing that Reed is no longer persuasive precedent, in its reply, UCB has pointed the court to *Ignatowski v. GC Services*, 3 F. Supp. 2d 187 (D. Conn. 1998). *Ignatowski*, however, is distinguishable, because it involved communications to the debtor's attorney. *Id.* at 190-91.

Another district court in this circuit has rejected an argument similar to that advanced by UCB in this case. *See Drossin v. Nat'l Action Financial Services, Inc.*, 641 F. Supp. 2d 1314 (S.D. Fla. 2009). In *Drossin*, the court declined to rely on the *Reed* decision, and concluded that identification by name recognition alone, without disclosing that the caller was a debt collector, was insufficient to satisfy the requirements of the FDCPA. *Id.* at 1319.

This court is persuaded that the plain language of the statute as it now reads, having been amended, requires a debt collector to identify in subsequent communications that he is a debt collector. The court concludes, therefore, that the grounds advanced by UCB do not entitled it to summary judgment as to the § 1692e(11) claim.

4. Section 1692f

18

UCB also contends that the Winberrys's § 1692f claims fail as a matter of law because the Winberrys must identify conduct that is beyond the other specific provisions of the FDCPA, and have not done so, citing *Taylor v. Heath W. Williams, LLC*, 510 F. Supp. 2d 1206 (N.D. Ga. 2007).  Subsection 1692f prohibits conduct which falls within its listed provisions,[4] or conduct that falls outside of the FDCPA violations which is unfair or unconscionable.  15 U.S.C. § 1692f.

The Winberrys contend that there is sufficient evidence to create a question of fact as to their § 1692f claims.  They do not respond to the legal argument advanced by UCB, instead

---

[4]  These provisions include:

(1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

(2) The acceptance by a debt collector from any person of a check or other payment instrument postdated by more than five days unless such person is notified in writing of the debt collector's intent to deposit such check or instrument not more than ten nor less than three business days prior to such deposit.

(3) The solicitation by a debt collector of any postdated check or other postdated payment instrument for the purpose of threatening or instituting criminal prosecution.

4) Depositing or threatening to deposit any postdated check or other postdated payment instrument prior to the date on such check or instrument.

(5) Causing charges to be made to any person for communications by concealment of the true purpose of the communication. Such charges include, but are not limited to, collect telephone calls and telegram fees.

(6) Taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if--

(A) there is no present right to possession of the property claimed as collateral through an enforceable security interest;

(B) there is no present intention to take possession of the property; or

(C) the property is exempt by law from such dispossession or disablement.

(7) Communicating with a consumer regarding a debt by post card.

(8) Using any language or symbol, other than the debt collector's address, on any envelope when communicating with a consumer by use of the mails or by telegram, except that a debt collector may use his business name if such name does not indicate that he is in the debt collection business.

contending only that making demands of Jeffery Winberry without inquiry into his situation is unconscionable, as was attempting to collect a debt from Martha Winberry which was not owed.

The *Taylor* case cited by UCB appears to reflect a growing consensus, at least among district courts, that a claim under § 1692f must be based on conduct either within the listed provisions, or be based on conduct which falls outside of those provisions, but which does not violate another provision of the FDCPA.  *See Baker v. Allstate Financial Serv., Inc.*, 554 F. Supp. 2d 945, 953 (D. Minn. 2008); *Taylor,* 510 F. Supp. 2d at 1217; *Foti v. NCO Financial Systems, Inc.*, 424 F. Supp. 2d 643 (S.D. N.Y. 2006).   In this case, Jeffery Winberry's claims do not meet this standard.  Martha Winberry, however,  has testified to conduct which falls within a provision, specifically that there was an attempt to collect a debt not permitted by law. Therefore, summary judgment is due to be DENIED as to Martha Winberry's § 1692f claim.

B.  Telephone Consumer Protection Act

The Winberrys originally brought a claim for violation of the Telephone Consumer Protection Act ("TCPA"), but now consent to summary judgment as to their TCPA claims.  *See* Doc. # 29 at page 57.  Summary judgment is, therefore, due to be GRANTED as to these claims.

C.  State law claims

1.  Negligence and Negligence per se

With regard to the negligence and negligence per se claims, UCB contends that negligence per se cannot be established on the basis of a violation of the FDCPA, and that there is no basis for concluding that UCB owed a duty to the Winberrys.

To establish negligence per se in Alabama, a plaintiff must prove: (1) that the statute the defendant is charged with violating was enacted to protect a class of persons to which the

plaintiff belonged; (2) that the plaintiff's injury was the kind of injury contemplated by the statute; (3) that the defendant violated the statute; and (4) that the defendant's violation of the statute proximately caused the plaintiff's injury. *Dickinson v. Land Developers Constr. Co.*, 882 So.2d 291, 302 (Ala. 2003).

The Alabama Supreme Court has explained that to prevail on a claim of negligence per se, a plaintiff must show that the statute allegedly violated protects a class of persons which is narrower than the general public. *See Parker Building Servs. Co. v. Lightsey*, 925 So. 2d 927 (Ala. 2005). In *Parker Building*, the court addressed a question of first impression: whether violation of a building code constitutes negligence *per se*. The court concluded that because the stated purpose of the building code was to protect the general public, negligence per se is inapplicable. *Id.* at 931. The Alabama Supreme Court has, however, recognized negligence per se in the context of rules designed to protect the particular class of people who use public streets and highways for travel. *See Harden v. Harden*, 197 So. 94, 97 (Ala. Civ. App. 1940); *Parker Building Servs.*, 925 So. 2d at 932 (quoting *Simpson v. Glenn*, 88 So. 2d 326, 327 (Ala. 1956)). In *Allen v. Delchamps*, 624 So. 2d 1065, 1067 (Ala. 1993), the Alabama Supreme Court found negligence per se based on violation of a federal regulation the purpose of which was to address a health concern of "sulfite-sensitive individuals."

The Winberrys contend that the FDCPA was not enacted for the public in general, but rather to protect a class of people who have suffered a job loss and disability and are unable to meet their obligations. UCB cites to cases from other jurisdictions in which the courts concluded that negligence per se cannot be established on the basis of a FDCPA violation.

*See, e.g., Alleyne v. Midland Mortg. Co.*, No. 05cv02412PSFPAC, 2006 WL 2960811 (D. Colo. Sept. 12, 2006).

One stated purpose of the FDCPA is "to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e).   The word "consumer" is defined in the statute as "any natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1692a(3).   A consumer also can include a consumer's spouse, parent, guardian, executor or administrator.  15 U.S.C. § 1692c(d).  Section 1692k creates a private right of action where "any debt collector ... fails to comply with any provision of this subchapter with respect to any person." 15 U.S.C. § 1692k (emphasis added).  Even people contacted with regard to a debt in error may bring a claim for violation of the FDCPA.  *See, e.g., Drossin v. National Action Financial Services, Inc.*, 255 F.R.D. 608, 612 (S.D. Fla. 2009).   The class identified by the Winberrys, therefore, is more narrow than that intended to be protected by the statute.  The scope of the protection of the FDCPA of "consumers" is as expansive as that of a building code.  *See Parker Bldg. Services*, 925 So. 2d at 932 (citing with approval a case holding that a building code protects the general public, including people who never enter the building but are outside the building).  This court concludes, therefore, that Alabama courts would find that FDCPA is more akin to the building code at issue in *Parker Bldg. Services* than to rules of the road as in *Harden*, or rules protecting sulfite-sensitive individuals as in *Allen*.  Summary judgment is due to be GRANTED as to the negligence per se claim.

The Winberrys state in their response to the Motion for Summary Judgment that their negligence and negligence per se claims are founded on the FDCPA statutory duty.  Doc. #29 at page 55.  The Complaint also appears to identify the allegedly breached duty in terms of the

22

duties imposed by the FDCPA. *See* Complaint at ¶ 84.  No distinction having been made between the negligence and negligence per se theories, summary judgment is also due to be GRANTED as to the negligence claim as well.

2.  Invasion of privacy

Alabama courts recognize the tort of invasion of privacy only where "there has been an intrusion upon the plaintiff's physical solitude or seclusion, or a wrongful intrusion into one's private activities in such manner so as to outrage or to cause mental suffering, shame or humiliation to a person of ordinary sensibilities." *I.C.U. Investigations, Inc. v. Jones*, 780 So.2d 685, 689 (Ala.2000); *Jacksonville State Bank v. Barnwell*, 481 So. 2d 863, 865 (Ala. 1985).

The Winberrys argue that there were at least 33 phone calls to collect the debt, that the calls were witnessed by a minor daughter, that calls came after the Winberrys stated they would not pay the debt, that there were calls with illegal threats to garnish wages, calls threatening future calls until the debt was paid, calls to Martha Winberry who was not responsible for the debt, calls were made even though Martha Winberry was suffering from health ailments and Jeffrey Winberry could not work due to a broken foot, and that the calls violated federal statutes.

UCB argues that the Winberrys have embellished otherwise benign issues in an attempt to create a question of fact for trial.  UCB states that although the Winberrys assert there is a factual dispute that there were thirty-three calls, they have already conceded that point.  UCB states that there is nothing wrongful or illegal about not displaying a telephone number on caller identification, calling a spouse, or calling a debtor who has refused to pay.  UCB says

there is no evidence that it called at times not allowed under the FDCPA or that the Winberrys's daughter witnessed a phone call to them from UCB. UCB further states that it denies that it threatened to garnish Jeffery Winberry's wages or take their home, but even assuming this occurred, it does not rise to the level required to survive summary judgment. UCB argues that the fact that the Winberrys chose not to avail themselves of the right to stop calls by mailing such a request, but instead logged the calls, means they cannot support a claim for invasion of privacy.

In *Jacksonville State Bank*, the court found significant, in concluding that the plaintiff established a claim for invasion of privacy, that the bank made between twenty-eight to thirty-five phone calls to the debtor's home and place of employment, that coarse and threatening language was used, and that there was a fraudulent altering of the terms of a security instrument in order to attempt to collect a debt. 481 So. 2d at 866. The facts in that case also reveal that there were threats of garnishment and a call to the debtor's mother. *Id.* at 865.

Conduct that has been held to be insufficient to establish an invasion of privacy as a matter of law involved three people and included the debtor calling an unlisted home telephone number on one occasion, conducting one 96-second telephone conversation, having one heated telephone conversation, mailing a statement of claim form, and accusations by the caller. *Sparks v. Phillips & Cohen Associates, Ltd.,* 641 F. Supp. 2d 1234, 1253 (S.D. Ala.2008).

While UCB contends that the Winberrys have embellished facts, the facts as testified to by the Winberrys must be accepted by the court in evaluating a motion for summary judgment by UCB. The court must conclude that the evidence in this case, viewed in a light most

24

favorable to the non-movant, is similar enough to the conduct in *Jacksonville State Bank,* and more invasive than that in *Sparks*, so as to preclude judgment as a matter of law on this case.

UCB also contends that the Winberrys waived their right to privacy because they spoke to an attorney as early as December 15, 2008, but chose not to notify UCB that they had retained an attorney, and kept a call log instead.  UCB argues that there can be no wrongful intrusion if the Winberrys welcomed the calls.  UCB relies on *Schifano v. Green Co. Greyhound Park, Inc.*, 624 So. 2d 178, 180 (Ala. 1993), in which the court concluded that the plaintiffs' attending a public activity and sitting in public seating negated a claim or intrusion into their affairs based on a photograph of them taken at the event being used in promotional materials.  While the right of privacy may be waived under Alabama law under those facts, the court cannot conclude that summary judgment is due on that ground in this case on the basis of the factually dissimilar *Schifano* decision.  While UCB's arguments might ultimately persuade a jury that the Winberrys's waived their rights, the court cannot conclude that the Winberrys's actions entitle UCB to judgment as a matter of law.

### V. CONCLUSION

For the reasons discussed, it is hereby ORDERED as follows:

1. The Motion for Summary Judgment (Doc. #20) is GRANTED and judgment is entered in favor of UCB and against Jeffery and Martha Winberry on the following claims:

a. Claims purportedly brought by both Plaintiffs in Count I of the Complaint for violation of 15 U.S.C. § 1692(b)(5), § 1692c(b), and claims in Count I for violation of § 1692e(10) based on contact with third parties; the TCPA claims in Count II of the Complaint; and the negligence and negligence per se claims in Count III of the Complaint.

25

b.  Claims for violation of 15 U.S.C. § 1692e(2), (5) by Martha Winberry based on a threatened seizure of the house and/or garnishment.

c.  The 15 U.S.C. § 1692f claim by Jeffery Winberry.

2.  The Motion for Summary Judgment is DENIED as to these claims in Count I of the Complaint:  the 15 U.S.C. § 1692d claim of both Plaintiffs, the § 1692e(2) and § 1692e(10) claims based on Johnson's representation that Martha Winberry owed the debt, the § 1692e(5) and § 1692e(10) claims by Jeffery Winberry based on threatened legal action, the § 1692e(11) claims by both Plaintiffs, and the § 1692f claim by Martha Winberry only.  Summary Judgment is also DENIED as to the invasion of privacy claim in Count III of the Complaint.

3.  Motion to Strike (Doc. #38) is DENIED.

The case will proceed on both Plaintiffs' claims for violation of 15 U.S.C. § 1692d and § 1692e(11), and the state law claim of invasion of privacy; Martha Winbberry's § 1692e(2), § 1692e(10), and 1692f claims concerning attempted collection of the debt from Martha Winberry; and Jeffery Winberry's claims for violation of 15 U.S.C. § 1692e(5) and § 1692e(10), based on threatened legal action.

Done this 17th day of March, 2010.

/s/ W. Harold Albritton
W.  HAROLD ALBRITTON
SENIOR UNITED STATES DISTRICT JUDGE